UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 11 C 8264 |
| PATRICK G. ROONEY and SOLARIS MANAGEMENT, LLC, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion for disgorgement, penalties and other relief of Plaintiff United States Securities and Exchange Commission ("SEC") against Defendants Patrick G. Rooney ("Rooney") and Solaris Management, LLC ("Solaris Management") (collectively "Defendants"). For the following reasons, the Court orders disgorgement of $715,700 plus prejudgment interest of $166,476 against Defendants on a joint and several basis, a civil penalty of $715,700 against Rooney, and a conditional officer and director bar against Rooney.

## BACKGROUND

The following facts are drawn from the SEC's complaint, which Defendants agreed they would not contest pursuant to the consent judgment. According to the complaint, Rooney is the founder, sole owner, and managing partner of Solaris

Management.  Solaris Management served as the investment adviser to Solaris Opportunity Fund, and the Solaris Offshore Fund (collectively the "Fund").  The Fund was promoted and sold to investors as a "non-directional" fund, meaning its strategy was to use options and futures to offset risk and capitalize on shorter timeframes.

The complaint states that Rooney deceived investors by abandoning the Fund's non-directional strategy and funneling all the Fund's money into a publicly owned penny stock company called Positron Corporation ("Positron"), where Rooney served as Chairman since 2004 and Chief Executive Officer since 2009.  Rooney received a salary and compensation from Positron.  However, Rooney failed to disclose his roles at Positron to the Fund's investors.

Beginning in February 2005 and continuing through November 2008, Rooney funneled over $3 million of undisclosed loans into Positron, many of which Rooney later converted into Positron preferred stock.  In 2007 and 2008, Rooney significantly increased the Fund's investment in Positron.  Rooney did all of this without disclosing to investors that he was deviating from the non-directional strategy or that he had a conflict of interest.  By November 2008, the Fund owned sixty percent of Positron's shares.  Rooney failed to file the proper notification with the SEC once the Fund became a majority shareholder of Positron.

Defendants' misconduct not only deprived the Fund and its investors of impartial advice, but also helped maintain Positron's viability as a public company even though the company was in severe debt.  During the time of the Fund's

investments, Positron reported significant losses—a $3.8 million net loss in 2005, a $6.6 million net loss in 2006, a $7.8 million net loss in 2007, and a $8.9 million net loss in 2008.

On November 18, 2011, the SEC brought this lawsuit against Defendants alleging violations of the antifraud provisions of the Investment Advisers Act of 1940 (the "Advisers Act"), the Securities Act of 1933 (the "Securities Act"), and the Securities Exchange Act of 1934 (the "Exchange Act"). On December 19, 2013, this Court entered a partial judgment against Defendants permanently enjoining Defendants from violating securities laws. The consent judgment also provides that the Court shall determine: (i) whether it is appropriate to order disgorgement of ill-gotten gains and a civil penalty from Defendants, and if so, the amounts of disgorgement and civil penalty; and (ii) whether Rooney should be prohibited from acting as an officer and director of a public company. The consent judgment further provides that Defendants are precluded from: (i) arguing that they did not violate securities laws as alleged in the complaint; (ii) challenging the validity of the consent judgment; (iii) contesting the allegations in the complaint for purposes of this disgorgement motion.

In the instant motion, the SEC seeks a final order for the following: (i) disgorgement of $715,700 against Defendants on a joint and several basis; (ii) prejudgment interest of $166,476 against Defendants on a joint and several basis;

(iii) a civil penalty of $715,700 against Rooney; and (iv) an officer and director bar against Rooney.

## DISCUSSION

### I. Disgorgement Plus Prejudgment Interest

Pursuant to the consent judgment, the Court will accept the allegations in the complaint as true for the purpose of determining appropriate relief. The SEC seeks disgorgement of $715,700 against Defendants jointly and severally for fees paid by the Fund to Defendants since January 1, 2008 (the "Fees"). Disgorgement plus interest are remedies available to prevent defendants from profiting from their illegal securities activities. 15 U.S.C. §§ 77t(d), 78u(d)(3). Disgorgement is an equitable remedy that takes ill-gotten gains from a wrongdoer so that he does not profit from his misconduct. *See SEC v. Lipson*, 278 F.3d 656, 662-63 (7th Cir. 2002). "The simple question is whether the profits, fees, and other compensation derived from wrongdoing." *SEC v. Capital Solutions Monthly Income Fund, LP*, CIV. 10-3995 DWF/JJK, 2014 WL 2922644 (D. Minn. June 27, 2014) (internal quotation marks and citations omitted). The SEC bears the burden of proving that its disgorgement figure reasonably approximates the amount of profits causally connected to the violation. *SEC v. Michel*, 521 F. Supp. 2d 795, 830-31 (N.D. Ill. 2007). The burden shifts to Defendants to prove the approximation is inaccurate. *SEC v. Black*, 04 C 7377, 2009 WL 1181480, at *2 (N.D. Ill. Apr. 30, 2009).

Defendants insist that the SEC does not satisfy its burden of establishing that the Fees are related, or causally connected, to Defendants' alleged misconduct because Solaris Management was entitled to the Fees regardless of what investments the Fund made. Defendants also contest the $715,700 amount and claim that Solaris Management only collected part of its 2007 fees that year and thus, the remainder of the 2007 fees should be subtracted because they were paid to Solaris Management in 2008 instead. Based on these calculations, Defendants state that $224,666 is the most they should be required to disgorge.

Moreover, Defendants assert that the Positron investment did not generate any additional management or incentive fees that Solaris Management would not have received otherwise. Defendants also aver that the SEC provides no evidence that indicates that the Solaris Management investors would have refused to pay the management and incentive fees had they learned earlier about the Positron investments. In other words, Defendants maintain that the disgorged profits that the SEC seeks are unrelated to alleged fraud.

Defendants' arguments fail. It is clear that the $715,700 amount reasonably approximates the profits sought by the SEC and derived from Defendants' wrongdoing. With respect to Defendants' request for this Court to decrease the disgorgement amount to $224,666, the SEC could have requested all fees received by Defendants generated as a result of their undisclosed conflict of interest or all money invested in the Fund that was obtained through Defendants' misrepresentations.

However, the SEC acted reasonably when it limited the disgorgement amount to reflect the Fees paid by the Fund to Defendants since January 1, 2008. The $715,700 disgorgement amount is deemed reasonable and will stand.

As for whether the $715,700 is causally connected to Defendants' violations, Defendants' misrepresentations to investors about the Fund's strategy, in addition to the undisclosed conflict of interest between Defendants and Positron, did not have this merely incidental effect that Defendants unsuccessfully attempt to convey in their response. Absent Defendants' misconduct, it is unlikely Positron would have even existed in 2008 because of the millions of dollars' worth of debt that the company began to accumulate from 2005 to 2008. It was these debts that Defendants attempted to satisfy when they made the decision to improperly funnel over $3 million dollars of the Fund's assets into Positron. If Defendants elected to abide by federal securities laws, this Court is convinced that they would have not have acquired these ill-gotten gains that they now claim are unrelated to the alleged fraud. Also, it is important to remember that Rooney benefited from having the Fund invest money into Positron, which paid him a salary and other forms of compensation. Therefore, this Court finds that disgorgement is appropriate and that the SEC has sufficiently shown that the profits were causally connected to the fraud. Defendants fail to show that the approximation is inaccurate.

As for the prejudgment interest, Defendants' consent judgment provides that in the event disgorgement is ordered, they would pay prejudgment interest based on the

IRS rate for underpayment of taxes calculated from August 1, 2008. Since disgorgement is appropriate, prejudgment interest will be also ordered. This Court adopts the SEC's computations of $715,700 in disgorgement and $166,476 in prejudgment interest (which the SEC accurately changed in its reply to reflect Defendants' objection to the calculations found in the SEC's initial motion).

## II. Civil Penalty

The second issue for the Court to consider is whether the imposition of a civil penalty against Rooney is appropriate, and if awarded, the proper amount. The SEC asks for a third tier penalty equivalent to the amount of disgorgement sought, $715,700. The SEC is authorized to seek, and the Court is authorized to impose "upon a proper showing" civil penalties for the securities law violations. 15 U.S.C. §§ 77t(d)(1), 78u(d)(3)(A). A third tier penalty can be imposed by the court if Rooney engaged in "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and the violation "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). When deciding whether to impose civil penalties and the amount of such penalties, a court often will consider several factors, including: (i) the egregiousness of the defendant's conduct; (ii) the degree of the defendant's scienter; (iii) whether the defendant's conduct created substantial losses or the risk of substantial losses to another person; and (iv) whether the penalty should be reduced

due to the defendant's demonstrated current and future financial condition. *SEC v. Milligan*, 436 F. App'x 1, 3 (2d Cir. 2011) (citation omitted).

A third tier civil penalty is appropriate. The conduct by Rooney clearly constituted fraud, deceit and manipulation, resulting in substantial losses to investors who now own an illiquid investment. Although Defendants claim that there is a "realistic possibility" that the Fund's investors could break even on their investments if the Fund liquidates its Positron position at $0.015, the Court refuses to allow this conjecture distract it from focusing on the facts in the complaint that detail the significant losses the Fund's investors endured because of Defendants' misconduct. Rooney's claim of poverty is a factor that has been considered, however this Court refuses to reduce the penalty since Rooney will be permitted to continue working at Positron as detailed in Part IV, *infra*. The Court acknowledges the substantial nature of a $715,700 civil penalty against Rooney, but his financial condition is merely one factor in the Court's analysis.

**III. Joint and Several Liability**

The SEC asks that Defendants be held jointly and severally liable for the disgorgement. Defendants ask that if penalties and disgorgement are awarded, that they be apportioned between Solaris Management and Rooney because Solaris Management is a validly formed limited liability company and the SEC has failed to establish why the Court should disregard its corporate entity status.

Joint and several liability for disgorgement is proper when two or more persons cooperate with, and aid each other in the commission of illegal conduct. *SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004). When such cooperation is established the court can hold all such tortfeasors jointly and severally liable for the entire amount of damages caused by all, unless liability can be reasonably apportioned. *SEC v. Homa*, 99 C 6895, 2004 WL 1474580, at *1 (N.D. Ill. June 28, 2004). The burden is on the tortfeasor to establish that the liability is capable of apportionment. *United States v. Acan Aluminum Corp.*, 964 F.2d 252, 269 (3d Cir. 1992). Generally, apportionment is difficult or even practically impossible because the defendants have engaged in complex and heavily disguised transactions. *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997). Very often the defendants move funds through various accounts to avoid detection, use several nominees to hold securities or improperly deprived profits, or intentionally fail to keep accurate records and refuse to cooperate with investigators in identifying the illegal profits. *Id.*

In the instant matter, Defendants fail to meet their burden of establishing that the liability can be apportioned. In fact, throughout their response, Defendants reiterate that the SEC has not presented argument or supportive authority as to why the Court should disregard Solaris Management's corporate entity status. However, it is Defendants' burden to establish the manner in which liability should properly be apportioned. Besides their mere assertion that the civil penalty should be split based on the limited liability status of Solaris Management, Defendants do not provide any

evidence for this Court to reasonably allocate the blame between Solaris Management and Rooney. Rooney is the founder, sole owner, and managing partner of Solaris Management. This Court is not persuaded by Defendants' assertion that there is a meaningful difference between Rooney and Solaris Management's liability. Therefore, this Court refuses to split the disgorgement amount, prejudgment interest, or the civil penalty (imposed against Rooney only) between Defendants. Defendants are joint and severally liable for the full amount of disgorgement plus prejudgment interest. Rooney is liable for the full amount of the civil penalty.

**IV. Officer and Director Bar**

The SEC requests that this Court permanently bar Rooney from serving as an officer of director of a public company. Section 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d)(1), gives courts the authority to prohibit individuals from serving as officers and directors of public companies. The section provides:

> Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, the rules or regulations thereunder ... it may in its discretion bring an action ... to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. § 78u(d)(1). A court may impose an officer and director bar "if the person's conduct demonstrates unfitness to serve as an officer or director." 15 U.S.C. § 78u(d)(2). The bar may be conditional or unconditional, and permanent or for a period of time. *Id*.

Rooney asks this Court not to implement an officer and director bar because his conduct fails to satisfy the six-factor test. In determining a defendant's fitness as an officer or director, a court may consider: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Black*, 04 C 7377, 2008 WL 4394891, at \*21 (N.D. Ill. Sept. 24, 2008) (citing *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1194 (9th Cir. 1998) and quoting *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)). These factors are not exclusive, nor is it necessary to apply all of these factors in every case. *Patel*, 61 F.3d at 141. "A district court should be afforded substantial discretion in deciding whether to impose a bar to employment in a public company." *Id*. The Second Circuit reminded other courts that "before imposing a permanent bar, a court should also 'consider whether a conditional bar (e.g. a bar limited to a particular industry) and/or a bar limited in time (e.g. a bar of five years) might be sufficient, especially where there is no prior history of unfitness." *Id.* at 142.

This Court concludes that a permanent officer and director bar in this case is not warranted. *See U.S. SEC v. Boey*, 07-CV-39-SM, 2013 WL 3805127 (D.N.H. July 22, 2013) ("A lifetime bar. . . is an extraordinary remedy, usually reserved for those defendants who engaged in prior securities violations, and under circumstances suggesting the likelihood of future violations.") (citations omitted). Rather, this Court

finds that a conditional bar is sufficient. Rooney is prohibited from operating another private fund and barred from serving as an officer or director of any other public company except for Positron.

The SEC argues that the Court should be concerned with Rooney's checkered history in the industry and his attempts to sanitize his misconduct. In the past, Rooney has been fined by the Chicago Board Options Exchange ("CBOE"). However, these CBOE violations did not occur when Rooney was serving as an officer or director and technically are not federal securities law violations. Additionally, even though Rooney acted with a high level of scienter and his conduct of funneling over $3 million of the Fund's assets into Positron while he served the important role as investment adviser was quite egregious, the Court concludes that the likelihood of recidivism is low. Rooney has consented to a permanent injunction from violating the securities laws and he has made assurances that he will not commit any future violations. The Court will hold him to both the consent judgment and his word.

Since the *Patel* factors are not exclusive, the Court has considered other reasons for its imposition of a conditional bar as opposed to a permanent bar. As for the status of Positron as a viable public company, a permanent bar prohibiting Rooney from continuing to attempt to stabilize Positron would surely impair the company's future, as well as negatively affect its shareholders' interests. Furthermore, based on Rooney's status as the father of three dependent sons and the caretaker of his ailing domestic partner, this Court finds that Rooney should be able to continue to support

his family with the salary he earns at Positron while simultaneously satisfying disgorgement plus prejudgment interest and the civil penalty ordered by this Court.

## CONCLUSION

For the foregoing reasons, the Court orders disgorgement of $715,700 plus prejudgment interest of $166,476 against Defendants on a joint and several basis, a civil penalty of $715,700 against Rooney, and a conditional officer and director bar against Rooney.

*Charles P. Kocoras*

_____
Charles P. Kocoras
United States District Judge

Dated: July 14, 2014